BROTHERHOOD RAILWAY CARMEN OF the UNITED STATES AND CANADA, et al., Plaintiffs,

v.

DELPRO COMPANY, et al., Defendants.

Civ. A. No. 82–464.

United States District Court, D. Delaware.

Oct. 15, 1982.

Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs; Edward J. Hickey, Jr., Michael S. Wolly, and Thomas A. Woodley, Mulholland & Hickey, Washington, D.C., of counsel.

Richard G. Elliott, Jr., Richards, Layton & Finger, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

The Union plaintiff, Brotherhood Railway Carmen of the United States and Canada ("BRC" or "Union"), along with an individual employee plaintiff member of the Union, Earl D. Whaley ("Whaley"), instituted suit against Delpro Company ("Delpro"), adjudged a carrier as defined by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*[1] and its corporate parent Trailer Train Company ("TTX"),[2] charging defendant Delpro with intentional, willful and bad faith violations of the RLA arising out of the conduct of labor negotiation which led to failure to achieve an agreement. In addition, plaintiffs alleged various unilateral alterations of the "status quo" culminating in the closing of Delpro's only facility with furloughing or dismissal of all the Delpro employees. Plaintiffs, having sued individually, but also having made class action allegations on behalf of all other employees similarly situated, seek, *inter alia,* declaratory and injunctive relief, back pay, and $750,000 in punitive damages to the class. Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1337.

Presently, two motions are before the Court. Following the filing of the complaint, BRC filed a motion seeking a ruling that the Union is a proper party to obtain the above recited relief. At issue is the scope of relief obtainable by a union under the RLA. For reasons which follow, it is held that the Union is a proper party to pursue the declaratory and injunctive relief sought on behalf of its employees, may not be a class representative, and has no standing to pursue claims for back pay or punitive damages on behalf of individual class members.

Defendant Delpro has moved to disqualify plaintiff's counsel, Thomas A. Woodley, Esq., and his firm Mulholland & Hickey. The issue presented is whether Woodley ought to testify on behalf of BRC, and, therefore, pursuant to Disciplinary Rule DR 5-102(A) of the Delaware Lawyer's Code of Professional Responsibility, be disqualified from representing BRC at trial. As set forth in Part II of this opinion, the Court concludes that decision of the disqualification motion would be premature at this time.

**I. Plaintiff's Motion for a Ruling that the Union is a Proper Party to Obtain Relief Sought in the Complaint**

The issue posed for decision is the right of a third party association to litigate as the representative of its individual members who would themselves have standing to sue. The prerequisites for associational standing have been succinctly set forth by the Supreme Court:

> ...[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). Without

---

1. *Delpro Co. v. Brotherhood Railway Carmen of the United States and Canada,* 519 F.Supp. 842 (D.Del.1981), *aff'd,* 676 F.2d 960 (3d Cir. 1982).

2. TTX has been named as an additional defendant, but for purposes of this opinion plays no part in the outcome. Consequently, Delpro will be referred to as the defendant.

quoting at length from the four count complaint, it may be summarized as accusing Delpro of intentional, willful and bad faith bargaining resulting in failure to reach a labor agreement relating to rates of pay, rules, working conditions and a method of dispute resolution. The complaint goes on to allege that following certification of the BRC as the union representative by the National Mediation Board, Delpro engaged in unilateral alteration of the status quo with respect to rules, working conditions, furloughs, terminations and ultimately, the closing of Delpro's only facility. It is claimed that all of the above-recited misdeeds were motivated in part by an anti-union animus of Delpro resulting in interference, influence and coercion of Delpro employees in a manner not countenanced by the RLA.

Viewing the complaint as summarized above, it is not seriously contested that with respect to many of the allegations, individual union members would have "standing to sue in their own right" while the remainder embrace interests "germane to the [Union's] purpose." The third criteria of *Hunt* that "neither the claim asserted nor the relief requested requires the participation of individual members in the law suit" is slightly more troublesome. Fortunately, the Supreme Court has provided guidance, instructing that associational standing turns on the nature of the requested remedy when elaborating "on the type of relief that an association could properly pursue on behalf of its members." *Id.* 432 U.S. at 343, 97 S.Ct. at 2441.[3]

[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. *Warth v. Seldin,* 422 U.S. 490, 515, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975).

Applying the law as enunciated by the Supreme Court to the factual allegations and requested relief of the complaint dictate that BRC is an appropriate party to pursue the requested declaratory and so much of the requested injunctive relief that does not embrace a back pay award. Conversely, BRC lacks standing to pursue back wages, reinstatement to the extent BRC would have that term embrace back wages, and other benefit claims and punitive damages on behalf of individual members of the Union. BRC's contention that these damages are a ministerial determination simply is not to be applicable to the proposed class. The damages claims are not common to the entire membership, nor shared by all in equal degree. For example, severance could have occurred by way of firing for cause, furlough, reduction in force, termination, etc. *See United Steelworkers of America v. University of Alabama,* 599 F.2d 56, 59 (5th Cir. 1979) (union had standing to seek prospective declaratory and injunctive relief but not to appeal adverse grant of summary judgment for monetary damages on civil rights claims arising out of alleged unlawful termination of employment); *Local 194, Retail, Wholesale and Department Store Union v. Standard Brands, Inc.,* 540 F.2d 864, 865 (7th Cir. 1976) (in Title VII case union did not have standing to seek back pay or other individualized forms of monetary relief). *Accord, Newton v. Kroger,* 501 F.Supp. 177, 179 (E.D.Ark.1980) (union defendant in a Title VII action had standing to seek injunctive relief but not monetary damages on behalf of its members on a cross-claim against an employer defendant); *see also Boyce v. Rizzo,* 78

---

**3.** As stated in *International Woodworkers v. Chesapeake Bay Plywood,* 659 F.2d 1259, 1267 (4th Cir. 1981), "The relevant inquiry ... is not merely whether circumstances permit members of the association to individually vindicate their own rights, but rather is whether the claims asserted or the relief requested requires each member to participate individually in the lawsuit."

F.R.D. 698, 704–05 (E.D.Pa.1978) (union lacks associational standing to assert personal grievance unique to plaintiff), *but see, Airmen v. Alaska Aero Industries, Inc.,* 95 LRRM 2867 (D. Alaska 1977) (union has standing under RLA to bring action for reinstatement and damage claims of nine specific airline pilots).

BRC asserts three arguments in resisting the conclusion that it lacks associational standing to assert reinstatement and back wage damage claims of its individual members. First, pointing to certain language of *Warth v. Seldin, supra,*[4] the Union vigorously urges that associational standing is determined disjunctively, *i.e.,* examining either the relief being sought *or* the claim being asserted. The Union then correctly asserts that the primary emphasis of the complaint is defendant's failure to fulfill the collective bargaining negotiation obligation mandated by the RLA and that individual monetary claims are incident to and arise only because of the failure to bargain. It then reasons that since the Union is the exclusive representative of all employees it is charged with the responsibility of being the spokesperson for and protecting the interests of its membership and thus has standing under "the nature of the claim" language. BRC's position has superficial appeal until it is recognized that it misreads *Warth,*[5] and totally ignores *Hunt.*[6]

◼ Second, while it is a certified bargaining representative, such certification does not automatically confer standing so as to make it the employee's litigating agent for all purposes as distinguished from enforcing individual claims resulting from breach of a negotiated collective bargaining

agreement. BRC correctly asserts that the Supreme Court in *International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 699–700, 86 S.Ct. 1107, 1109–10, 16 L.Ed.2d 192 (1966), held that a union may properly sue under section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185, to enforce a collective bargaining agreement to recover wages or vacation pay of its individual employees. The Union then relies upon *Hoosier* for the proposition that it must have associational standing to press individual member's reinstatement and wage claims under the RLA. If BRC were suing for breach of an existing collective bargaining agreement under the RLA, the analogy would be compelling. But BRC never progressed to the stage where a collective bargaining agreement had been achieved. As a consequence, unlike the fact situation in *Hoosier,* the matter sub judice is not grounded upon breach of a collective bargaining agreement. Instead, BRC seeks associational standing to press reinstatement and back wage claims allegedly flowing from Delpro's violating the RLA. There is a vast difference between having representative status to urge individual member's claims flowing from breach of a collective bargaining contract and associational standing to urge individualized member's damages for alleged violation of a federal statute. *United States ex rel. United Brotherhood of Carpenters and Joiners v. Woerfel Corp.,* 545 F.2d 1148, 1151 (8th Cir. 1976) (a union could not press its members' wage claims against a general contractor and its surety under the Miller Act, 40 U.S.C. § 270a *et seq.,* absent an assignment of unpaid wages to the union by members).[7]

---

4. [An] association must allege that its members, or any of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.... So long as this can be established, and so long as *the nature of the claim and of the relief sought does not make the individual party indispensable to proper resolution of the cause,* the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975) (emphasis added by plaintiff).

5. See n. 4, *supra.*

6. See page 3, *supra.*

7. The Court also stated that section 301 of the LMRA, 29 U.S.C. § 185(6), does not give a union a general right to represent its employees. Moreover, a union is not a real party in interest solely by virtue of its associational status. *Id.* 545 F.2d at 1151.

*See also Drywall Tapers & Pointers, Etc. v. Operative Plasterers & Cement Masons International Assoc.,* 91 F.R.D. 216, 218–19 (E.D.N.Y.1981) (union may press monetary damage claims of its individual members for breach of a labor contract under the Labor-Management Relations Act of 1947).

Third, the Union places heavy reliance upon *Airmen v. Alaska Aero Industries,* 95 LRRM 2867 (D. Alaska 1977). *Airmen* does hold that a union has associational standing to bring an action under the RLA for reinstatement and monetary damages for individual members even in the absence of a collective bargaining agreement. However, in that case standing was attacked on the ground that it was lacking under state law and that express authority in the union was a prerequisite to the Union's standing. Understandably, the judicial analysis went off on the grounds being urged. As a consequence, associational standing as a prudential limitation on federal court jurisdiction was never considered. In like vein, *Warth,* which had issued two years earlier, was understandably never mentioned. In any event, to the extent *Airmen* is inconsistent with the result reached here, I decline to follow it.

■ The fact that the Union lacks associational standing to pursue the individual reinstatement and wage claims of its members does not mean that relief for individual members is unavailable. In fact, the complaint carries not only BRC as a plaintiff, but also one other plaintiff, Earl D. Whaley, a terminated employee of Delpro who brought this "action on behalf of himself and other employees or former employees who are similarly situated."[8] In addition,

there are class action allegations.[9] However, BRC seeks to be a class representative along with Whaley.[10] Such class representative status by the Union is violative of the plain wording of Fed.R.Civ.P. 23 which requires that the class representative must be a member of the class.[11] Accordingly, BRC may not act as a class representative. *Drywall Tapers & Pointers v. Local 530,* 91 F.R.D. at 218; see *United Brotherhood of Carpenters & Joiners v. Woerfel Corp.,* 545 F.2d at 1152.

An Order will be entered permitting BRC to seek the requested declaratory relief and so much of the injunctive relief as is not inconsistent with this opinion and denying to BRC the right to pursue punitive damages, back pay and reinstatement to the extent that term is construed by the parties to include any component of back pay and monetary damages on behalf of its individual members.

## II. Defendant's Motion to Disqualify

Defendant Delpro's motion to disqualify plaintiffs' counsel, Thomas A. Woodley, Esq., and his firm of Mulholland & Hickey arises from the plaintiffs' allegations in Count III of their complaint that "since October 1, 1978 Delpro has determined to terminate or furlough its employees and close its facilities without engaging in meaningful, good faith negotiations over the decision and/or the effects of such determination." (Doc. 1, ¶ 24). Delpro contends that Woodley's substantial involvement in these negotiations placed into issue by the plaintiff establishes that he ought to testify on behalf of his client, BRC, in sup-

---

**8.** Doc. 1, ¶ 5.

**9.** *Id.* ¶¶ 8–15.

**10.** Thus paragraph four of the complaint provides in pertinent part that: [BRC] brings this action on its own behalf as well as on the behalf of its members and those employees whom it is certified to represent, including the individual employees and former employees of defendant Delpro Company.

In like vein, paragraph 8 of the complaint provides: *Plaintiffs* bring this action pursuant to Rule 23(a), 23(b)(1) and 23(b)(2) of the Fed-

eral Rules of Civil Procedure, as amended, as a "class action" for themselves and as representatives of and for and on behalf of all other persons similarly situated to plaintiff Earl D. Whaley, to wit, all persons employed or formerly employed by Delpro Company who are entitled to the relief sought herein. (emphasis added).

**11.** Fed.R.Civ.P. 23 provides in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties . . . .

port of its allegation that Delpro did not engage in good faith negotiations. The issue presented is whether the involvement of plaintiffs' counsel in the negotiations at issue in this suit necessitates that counsel be disqualified pursuant to Disciplinary Rule 5–102(A) of the Delaware Lawyer's Code of Professional Responsibility which, generally, compels an attorney to withdraw from the conduct of a trial when the attorney "learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client."

The facts relevant to a determination of this motion are largely undisputed. On July 13, 1982 and July 21, 1982 representatives from Delpro and BRC met to discuss the closing of Delpro's facility in Bear, Delaware and the effects of that closing on Delpro's employees. Chief spokesman for Delpro was Roy S. Schoonhoven, Esq.[12] BRC was represented by Woodley and Anthony F. D'Avanzo, Grand Lodge Deputy of BRC.[13] Although the parties disagree as to who was spokesman for BRC, it is agreed that Woodley did most of the talking for BRC at the two meetings. At the present time the parties do not agree as to what was said at the two meetings. Delpro has submitted "transcripts" of the meetings that are based upon notes taken by Delpro's representatives then present. BRC has not adopted these transcripts. However, BRC maintains that the parties should be able to stipulate before trial as to what occurred at the meetings.

■ The power of this Court to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it. *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir. 1980); *Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385–86 (3d Cir. 1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). The starting point for an analysis of the issue of disqualification is the Delaware Lawyer's Code of Professional Responsibility ("Code") composed of Canons and Disciplinary Rules ("DR") which have been adopted by the District of Delaware pursuant to Local Rule 8.2 D.2 (1980). The Court is also guided by the Ethical Considerations ("EC") adopted by the American Bar Association.[14]

■ In applying the Code to a particular case, an attorney should only be disqualified when it is determined on the facts of the particular case that disqualification is an appropriate means of enforcing the applicable disciplinary rule. The ends that a particular rule is designed to serve should be considered in light of any countervailing policies, such as, permitting a litigant to retain counsel of his choice and enabling attorneys to practice without excessive restrictions. *United States v. Miller,* 624 F.2d at 1201. Moreover, motions to disqualify are often thinly veiled attempts to deprive opposing parties of their counsel of choice. "The attempt by an opposing party to disqualify the other side's lawyer must be viewed as a part of the tactics of an adversary proceeding. As such it demands judicial scrutiny to prevent literalism from possibly overcoming substantial justice to the parties." *J.P. Foley & Co., Inc. v. Vanderbilt,* 523 F.2d 1357, 1360 (2d Cir. 1975) (Gur-

---

12. Joseph LeConte and Wayne Sigley, managers of the Delpro facility, were present at the July 13th meetings. Ormond Pendy, Delpro Vice-President, was present at the July 21st meeting.

13. On the 13th of July, Salvatore J. Raia, General Chairman of BRC, and Gary Bryant, Committee Secretary for Local No. 123 of BRC, were present. Bryant and Earl Whaley, Chairman of Local 123 of BRC, were present on July 21st.

14. In working with the Code it is kept in mind that the Canons are "axiomatic norms expressing in general terms the standards of profes-

sional conduct expected of lawyers in their relationship with the public, with the legal system, and with the legal profession." The Ethical Considerations are "aspirational in character and represent the objective toward which every member of the profession should strive." Unlike the Ethical Considerations, the Disciplinary Rules are mandatory in character, setting forth "the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." American Bar Association, *Code of Professional Responsibility and Code of Judicial Conduct,* Preliminary Statement 1C (1975).

fein, J., concurring). Therefore, in deciding a motion to disqualify counsel great care must be taken to respect a client's choice of counsel while at the same time maintaining the highest ethical standards of professional responsibility.

Of primary importance to the resolution of the defendant's disqualification motion are Canon 5 [15] and DR5–102(A) which reads:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR5–101(B)(1) through (4) [which state that a lawyer or his firm may testify:]
>
> (1) If the testimony will relate solely to an uncontested matter.
>
> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
>
> (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

The issue before the Court is whether Woodley ought to testify on behalf of BRC and, therefore, pursuant to DR 5–102(A), be disqualified from representing BRC at trial. If so, the Court must then consider whether disqualification would impose such a substantial hardship upon the

plaintiffs that Woodley should not be disqualified even though he ought to testify. DR 5–101(B)(4). The party seeking to have opposing counsel disqualified has the burden of establishing that counsel's continuing in the cases would violate the disciplinary rules. *MacArthur v. Bank of New York,* 524 F.Supp. 1205, 1209 (S.D.N.Y. 1981); *Zions First National Bank v. United Health Clubs, Inc.,* 505 F.Supp. 138, 140 (E.D.Pa.1981).[16]

Defendant argues that Woodley ought to testify in support of his clients' claim that Delpro negotiated in bad faith. The defendant claims that Woodley, the chief spokesman for BRC at meetings at which legal issues dominated the discussions, is the best witness for plaintiffs and ought to testify in support of their claim of bad faith. According to the defendant, Woodley would be able to testify as to what was said at the negotiations. In addition, he would be able to describe the demeanor of Delpro's representatives throughout the meetings. The defendant claims that Woodley, as a lawyer, was in a better position than other BRC representatives at the meetings to understand the issues discussed and to observe the demeanor of Delpro's representatives because he understood the legal issues to which they were reacting.

In response, the plaintiffs argue that Woodley need not testify in that he does not possess crucial information which must be divulged. Plaintiffs stress that other BRC representatives are available to testify as to what occurred at the meetings. In addition, the plaintiffs point out the parties are near agreement as to what was said at the meetings. The plaintiffs argue that Woodley's testimony should not be required if the parties were able to stipulate as to what was said at the meetings. Testimony regarding the demeanor of the witnesses, according to BRC, could be supplied by the other BRC representatives present at the meeting. Plaintiffs also argue that the

---

**15.** A lawyer should exercise independent professional judgment on behalf of a client.

**16.** In *MacArthur,* the Court correctly stated that the "mandatory nature of DR 5–102(A)

also requires that the court be able to disqualify counsel *sua sponte* when the need arises. 524 F.Supp. at 1209. Obviously, such a need is not present here.

Court should defer to the informed decision of BRC and their counsel that Woodley need not and will not testify at trial. Finally, BRC claims that disqualification is not warranted in that it would work a substantial hardship on the plaintiffs.

DR 5–102(B) calls for an attorney to be disqualified when it is obvious that the attorney ought to testify. The test for determining whether an attorney ought to testify has been stated variously by the courts. In *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., Inc.,* 546 F.2d 530, 538–39 n. 21 (1976), *cert. denied, Super Athletics Corp. v. Universal Athletic Sales Co.,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), the Third Circuit Court of Appeals stated in a footnote that the language of DR 5–102(A) suggests that a lawyer ought to testify on behalf of his client when he "has crucial information in his possession which must be divulged." The Court of Appeals for the Fifth Circuit has stated that the test of whether a lawyer ought to testify requires the party seeking disqualification to show that the client's counsel are aware of facts making it "obligatory to place themselves on the witness stand in order to advance the [client's] case completely and zealously." *Cossette v. Country Style Donuts, Inc.,* 647 F.2d 526, 530–31 (5th Cir. 1981); *Amator Investments, Inc. v. Phillips Plastic Corporation,* C 81–1116A, slip op. (Aug. 18, 1982, N.D.Ga.). The most stringent expression of the test requires that a lawyer ought to testify when that testimony could be "significantly useful" to the client. *MacArthur v. Bank of New York,* 524 F.Supp. at 1208. Under any of these tests, the Court is unable to decide at this time whether Woodley ought to testify.

■ The defendant puts forth a strong argument in favor of disqualifying Woodley. He did do most of the talking at the negotiations. His experience in negotiations and familiarity with the legal issues being discussed probably made him a more astute observer than the other BRC representatives, D'Avanzo and Bryant. Although his testimony would largely corrobo-rate that of D'Avanzo, corroborative testimony should be utilized unless it is merely cumulative. EC 5–10. *See, MacArthur v. Bank of New York,* 524 F.Supp. at 1208 (counsel ought to testify to supply his own account of the events in question, even if corroborative); *Supreme Beef Processors v. American Consumer Industries, Inc.,* 441 F.Supp. 1064, 1068 (N.D.Tex.1977) (counsel should testify to corroborate client's story since client is entitled to "every scrap of favorable evidence that is essential to his case"); *United States ex rel. Sheldon Electric Co., Inc. v. Blackhawk Heating & Plumbing Co., Inc.,* 423 F.Supp. 486, 488, 488 n. 3 (S.D.N.Y.1976) (attorney ought to testify regarding negotiations even though principals were present). However, at this time, the parties appear to be close to an agreement as to what was said at the negotiations. If the parties are able to stipulate as to what was said at the negotiations, the need for Woodley's testimony would be significantly reduced. The need for Woodley's testimony would be similarly reduced if the plaintiffs adopt Delpro's "transcripts" of the two meetings.

For these reasons, determination of whether Woodley should be disqualified would be premature. Disqualification should only be ordered when the facts at issue are sufficiently clear to enable a court to determine whether counsel ought to testify on behalf of his client. The Court will not disqualify plaintiffs' counsel at this time only to find later in pre-trial proceedings that such disqualification was not necessary.

■ In holding that determination of defendant's motion would be premature, the Court does not accept plaintiffs' argument that the Court need not decide whether Woodley ought to testify in that the Union has decided that Woodley need not and will not testify. Plaintiffs rely upon *Kroungold v. Triester,* 521 F.2d 763, 765–66 (3d Cir. 1975), and *J.D. Pflaumer, Inc. v. United States Dept. of Justice,* 465 F.Supp. 746, 748 (E.D.Pa.1979), in support of their position that a party can avoid disqualification by asserting that an attorney will not testify

on behalf of his client.[17] However, in both *Kroungold,* 521 F.2d at 765–66, and *J.D. Pflaumer, Inc.,* 465 F.Supp. at 747–48, the courts independently assessed whether the attorneys ought to have testified on behalf of their client. In *Kroungold,* the court held that the district court did not abuse its discretion where the court agreed with plaintiff's counsel that he need not be called as a witness "since his very minor involvement as counsel for [the plaintiff] has no relationship to the factual and legal issues in the litigation." 521 F.2d at 766. Here, Woodley is substantially involved in the factual and legal issues present in this case that Delpro failed to negotiate in good faith. In *J.D. Pflaumer, Inc.,* 465 F.Supp. at 747–48, the Court concluded that plaintiff's present "intention to forego counsel's testimony was not so 'obviously' contrary to what they 'ought' to do as to require me to declare that their intention is ill-considered, that their only hope of success lies in counsel's testimony and that they must now at this late date seek legal representation elsewhere." Although great deference was given to the decision of counsel not to testify, the Court still independently determined that the testimony of counsel was not needed for the plaintiff to establish its case. *Id.*[18]

DR 5–102(B) calls for an attorney to be disqualified when it is likely that the attorney *ought* to testify on behalf of the client. What controls is whether the attorney ought to testify, not whether he will testify. That the lawyer and his client decide that the lawyer need not testify is not controlling. *J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357, 1359 (2d Cir. 1975); *Amatar Investments, Inc. v. Phillips Plastics Corp.,* C81–1116A, slip op. (Aug. 18, 1982 N.D.Ga.);

*MacArthur v. Bank of New York,* 524 F.Supp. at 1209. As stated in *MacArthur,* 524 F.Supp. at 1209:

> [T]he client [may not] waive the rule's protection by promising not to call the attorney as a witness. The ostensible paternalism of disregarding such waivers is justified by the circumstances in which the problem arises. The client will generally be reluctant to forego the assistance of familiar counsel or to incur the expense and inconvenience of retaining another lawyer. The most serious breaches of the rule, in which an attorney has become intimately involved in the subject matter of the dispute, will often be the very situations in which withdrawal is most burdensome. Moreover, the party will generally be guided in its decision by the very attorney whose continued representation is at issue. At the same time, the attorney will be reluctant to jeopardize good relations with the client and may—against his better judgment—defer to the client's desire for representation.

The plaintiffs and their counsel are not in the best position to decide whether or not Woodley ought to testify. Although the Court will take their decision into account, for the reasons stated in *MacArthur, supra,* the Court must independently assess whether Woodley ought to testify.

As stated above, the determination of whether Woodley ought to testify would be premature at this time. In *Miller Electric Construction, Inc. v. Divine Lighting Co., Inc.,* 421 F.Supp. 1020, 1022–24 (W.D. Pa.1976), the Court decided to dismiss a disqualification motion without prejudice upon finding that determination of the motion would be premature. The court con-

**17.** Plaintiff's reliance on *Universal* for the proposition that counsel can avoid DR 5–102(A) by deciding to act as advocate rather than witness is misplaced. In *Universal,* the testimony of the associate-expert and that of another expert was completely fungible. On that basis the Court concluded that, "the law firm should have withdrawn once it decided that its associate would testify, or else the firm should have found another expert." *Id.* at 538. In the present case, the testimony of Woodley is not fungible. No one, even the other BRC repre-

sentatives at the meetings, can reproduce his perceptions of what transpired at the negotiations. Before counsel can decide to act as an advocate, it must be determined that counsel need not act as a witness.

**18.** To the extent that the Court in *J.D. Pflaumer, Inc.* held that counsel can avoid disqualification under DR 5–102(A) simply by informing the Court that they do not intend to testify, I decline to follow that decision.

cluded that dismissal of the action with leave to renew would be appropriate if it would not unduly prejudice either party. *Id.*

The Court believes similar action is appropriate in this case. To decide whether Woodley should be disqualified before the parties have attempted to agree as to what was said at the negotiations would be premature and unfair to plaintiffs. The Court will not impose the rather drastic sanction of disqualification only to find later, before the start of trial, that such action was not necessary.[19] The defendant will not be prejudiced in that it may bring this motion again if it deems it appropriate. Nor will plaintiffs be prejudiced. They will be able to retain counsel of their choice for the time being and possibly throughout this proceeding. The plaintiffs, even if Woodley and his firm are disqualified later, may then move for a continuance if time is needed for substitute trial counsel to prepare for trial.

The Court urges both parties to proceed to attempt to reach agreement regarding the negotiations as soon as possible so that this motion may be resolved promptly before trial. The Court advises the plaintiff that the "distinctive value," as that term is used in DR 5–101(B)(4), of present counsel will not be deemed to increase from this time forward on account of counsel's further preparation for trial. The plaintiff may wish to consider at this time whether to proceed with present trial counsel and risk disqualification later or to select new trial counsel. In any event, Woodley and his firm, Mulholland & Hickey, will be permitted to participate in all pre-trial proceedings[20] and in an advisory capacity at

trial, if it is later decided that he should be disqualified pursuant to DR 5–102(A). See, *Norman Norell, Inc. v. Federated Department Stores, Inc.,* 450 F.Supp. 127, 131 (S.D. N.Y.1978) (The compromise of allowing an attorney who ought to testify to remain as counsel prior to trial "hews to the Code's ethical spirit without violence to the client's wishes, and it serves the interests of substantial justice to the parties in this action.").

Therefore, the Court concludes that defendant's motion for disqualification of plaintiffs' counsel is premature and it will be denied without prejudice to renew the motion should further developments so warrant.

An appropriate Order will issue.

---

**19.** The Court expresses no opinion as to whether Woodley should be disqualified if the parties are successful or unsuccessful in reaching agreement regarding the contents of the July 13th and 21st negotiations. In light of the finding that deciding defendant's motion would be premature, it is not necessary to discuss the various rationales said to underlie DR 5–102(A) and how, if at all, these rationales might affect application of the rule if the motion is renewed. *See, International Electronics Corporation v. Flanzer,* 527 F.2d 1288, 1292–94 (2d Cir.1975); *General Mill Supply Co. v. SCA Services, Inc.,*

505 F.Supp. 1093, 1095–1100 (E.D.Mich.1981); *Greenbaum Mountain Mortgage Co. v. Pioneer National Title Insurance Co.,* 421 F.Supp. 1348, 1352–54 (D.Colo.1976); Note, *The Advocate-Witness Rule, If X, then Z, But Why?,* 52 N.Y. U.L.Rev. 1365, 1384–97 (1975). Similarly, it is not necessary to discuss whether disqualification of Woodley would work a substantial hardship on the plaintiffs. *See* DR 5–101(B)(4).

**20.** Other than pre-trial motions, if any, requiring Woodley to attest to what occurred at the negotiations at issue.