**In the Matter of William C. HEAD, Debtor (Two Cases).**

**Isaiah HUNTER, III and Hunter Grading Contracting, Inc., Plaintiffs,**

v.

**William C. HEAD, Defendant.**

**Isaiah HUNTER, III and Hunter Grading Contracting, Inc., Plaintiffs,**

v.

**William C. HEAD; William C. Head, P.C.; McDonald, Head, Carney & Haggard; and S.O.S. Financial Services, Inc., Defendants.**

**Bankruptcy No. 89–30494.**
**Adv. Nos. 89–3038, 89–3042.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Feb. 12, 1990.

John J. Andrews, Jr., Lexington, Ga., for debtor.

Myles E. Eastwood, Atlanta, Ga., for plaintiffs.

Robert B. Wedge, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

William C. Head, Defendant, Debtor, filed a petition under Chapter 11 of the Bankruptcy Code on August 11, 1989. A state court action filed prior to this bankruptcy against Debtor by Isaiah Hunter, III, and Hunter Grading Contracting, Inc., Plaintiffs, was removed to district court. The district court has referred the removed action to this Bankruptcy Court. On November 20, 1989, Plaintiffs filed in this Court a complaint to determine the dischargeability of a debt. In each action, Plaintiffs filed a motion to disqualify Debtor's attorney on January 3, 1990. A hearing on Plaintiffs' motion to disqualify was held on January 14, 1990. The Court, after considering the arguments and briefs of counsel, now publishes its opinion.

Debtor was a partner in the law firm of McDonald, Head, Carney & Haggard (here-inafter "Defendant Law Firm"). Plaintiffs employed Debtor to represent them concerning certain legal matters. Plaintiffs contend Debtor mishandled these legal matters. Plaintiffs filed a complaint against Debtor, Defendant Law Firm, and several other defendants in the Superior Court of Clark County, Georgia, on June 30, 1989.[1] Debtor filed his petition under Chapter 11 of the Bankruptcy Code on August 11, 1989. The state court action was removed to the United States District Court for the Middle District of Georgia pursuant to 28 U.S.C. § 1452(a).[2] The district court has referred the removed action to this Bankruptcy Court pursuant to 28 U.S.C. § 157(a).[3]

Plaintiffs state that Bob B. Wedge and his law firm of Stokes, Shapiro, Fussell & Wedge were retained by the legal malpractice insurance carrier of Debtor and Defendant Law Firm to defend Plaintiffs' claims in the state court action which was later removed to federal court. Defendant Law Firm contends that neither it nor Debtor is liable to Plaintiffs. Defendant Law Firm contends that it is not liable for any alleged torts by Debtor because these alleged acts were beyond the scope of Debtor's role as a general partner. Defendant Law Firm also contends that it is not liable for any alleged intentional torts or alleged fraud by Debtor. Defendant Law Firm has filed a proof of claim in Debtor's bankruptcy case seeking indemnification from Debtor should it be found liable to Plaintiffs. Some of Defendant Law Firm's responsive pleadings have been prepared by Mr. Wedge. Mr. Wedge has also filed responsive pleadings for Debtor contending that Debtor is not liable to Plaintiffs.

Plaintiffs filed a complaint to determine the dischargeability of the debt which Debtor allegedly owes them. Plaintiffs contend the debt is nondischargeable because it arose from a willful and malicious injury which would be nondischargeable under section 523(a)(6) of the Bankruptcy

---

1. Plaintiff has reached a settlement with the other defendants and they are not involved in the issue before this Court.

2. *See* 28 U.S.C.A. § 1452(a) (West Supp.1989).

3. *See* 28 U.S.C.A. § 157(a) (West Supp.1989).

Code.[4] Plaintiffs also contend the debt is nondischargeable under section 523(a)(4)[5] of the Bankruptcy Code because the debt arose through fraud and defalcation by Debtor while acting in a fiduciary capacity or through larceny.

Plaintiffs contend that Mr. Wedge's representation of both Debtor and Defendant Law Firm presents a clear conflict of interest because the asserting of defense theories which may benefit one client may be harmful to the other client. Plaintiffs argue that it is in Debtor's best interest for Debtor's attorney to show that Debtor's liability falls below the standards for nondischargeability in section 523(a)(4) and (6). In that event, Debtor's debt to Plaintiffs would be dischargeable. Defendant Law Firm, however, could still be liable for the torts of Debtor.

Plaintiffs contend that Defendant Law Firm's best interest would be served if its attorney can show that Debtor's acts were willful and intentional torts. The acts would thus be *ultra vires* from the general business of the law firm and Defendant Law Firm would not be liable to Plaintiffs. Debtor, however, would remain liable because these debts would not be dischargeable. It is quite apparent from only a brief consideration of the issues that different defense theories exist in the two actions. The question is whether that creates a conflict that disqualifies Mr. Wedge and his firm.

This Court has held that the American Bar Association's Code of Professional Responsibility governs the conduct of attorneys practicing before this Court.[6] In *In re Macon Prestressed Concrete Co.*,[7] this Court stated:

The ABA Code of Professional Responsibility governs the conduct of lawyers practicing before the federal courts, and it is a guideline for the federal courts to follow in the regulation of their affairs. *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 n. 15 (5th Cir.1979); *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir.1976). The ABA Code of Professional Responsibility likewise governs the disqualification of attorneys in bankruptcy proceedings. *Kraft, Inc. v. Alton Box Board Co. (In re Corrugated Container Antitrust Litigation)*, 659 F.2d 1341, 1349 (5th Cir. Oct. 29, 1981) (Unit A); *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328 at 335 (E.D.Pa.1982).

61 B.R. at 378. *See also Cook Banking Co. v. Davis (In re Davis)*, 40 B.R. 163, 165 (Bankr.M.D.Ga.1984); *In re The Cropper Co.*, 35 B.R. 625, 631 (Bankr.M.D. Ga.1983).

Plaintiffs contend that Mr. Wedge should be disqualified because both Debtor and Defendant Law Firm have, or are presumed to have, revealed confidences and secrets to Mr. Wedge. Canon 4 of the ABA Model Code of Professional Responsibility[8] (the "Model Code") provides: "A Lawyer should preserve the confidences and secrets of a client." Disciplinary Rule 4–101(C)(1)[9] provides that a lawyer may reveal confidences or secrets with the consent of the client or clients affected but only after a full disclosure to them.

The Court notes that the provisions concerning confidentiality and secrets of the Model Code and the Standards of Conduct adopted by the State Bar of Georgia are essentially identical.[10]

---

4. 11 U.S.C.A. § 523(a)(6) (West 1979).

5. 11 U.S.C.A. § 523(a)(4) (West 1979).

6. The Court recognizes that the American Bar Association (ABA) replaced its Code of Professional Responsibility with the ABA Model Rules of Professional Conduct in August 1983. *See Waters v. Kemp*, 845 F.2d 260, 263 n. 9 (11th Cir.1988). The Court notes, however, that the ABA Code is most similar to the Standards of Conduct for Attorneys adopted by the State Bar of Georgia. *See* Rules and Regulations for the Organization and Government of the State Bar of Georgia Part IV, Chapter 1.

7. 61 B.R. 375 (Bankr.M.D.Ga.1986).

8. Model Code of Professional Responsibility Canon 4 (1980).

9. *Model Code of Professional Responsibility* DR 4–101(C)(1) (1980).

10. *See* Rules and Regulations for the Organization and Government of the State Bar of Georgia, Part IV, Chapter 1. Standard 28 provides that a lawyer may not reveal the confidence of a client. Standard 28(b)(1) provides that a lawyer may reveal confidences or secrets with the con-

■ Canon 4 requires an attorney to preserve the confidences and secrets of both current and former clients. The purpose of the rule is to encourage communication between the client and attorney. A two-prong test is used for disqualification of attorneys under Canon 4. First, the party seeking disqualification must prove that it once enjoyed an attorney-client relationship with the opposing lawyer; and second, the movant must show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented it. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 728 (11th Cir.1988).

■ The facts fail to show that Plaintiffs have ever enjoyed an attorney-client relationship with Mr. Wedge or his firm. Plaintiffs therefore are not the proper parties to bring a disqualification action under Canon 4. The first prong of the Canon 4 test has not been met. The Court further notes that Debtor and each member of Defendant Law Firm have submitted affidavits consenting to Mr. Wedge representing them. The Court notes that Debtor and his former law partners are all attorneys and should be keenly aware of any dangers posed by multiple representation. Plaintiffs contend that Debtor's waiver is ineffective since the submission of written waivers should be obtained not only from Debtor but from all creditors and the United States Trustee. *See In re Lee*, 94 B.R. 172, 177–79 (Bankr.C.D.Cal.1989) (California Rules of Professional Conduct 5–102(B) provides that an attorney may not represent conflicting interest except upon written consent of all parties involved; an attorney who decides to represent a debtor in possession and a conflicting interest must obtain a written waiver from the debtor, all creditors, and the United States Trustee).

■ The facts in the case at bar are distinguishable from those in *In re Lee*. In *In re Lee*, two separate Chapter 11 bankruptcy cases were pending and counsel attempted to represent each debtor which had actual conflicting interests. While there may be some authority, as in *In re Lee*, for a need for the waiver to be executed by all creditors and the United States Trustee, the Court need only note this possible requirement. The Court has reviewed *In re Lee* and is persuaded that the facts in the case at bar are distinguishable. The Court does not feel that it is necessary for all creditors in Debtor's bankruptcy case to execute a waiver. The waiver is not controlling as to the issues before the Court, but it is an indication that the real parties to the dispute with Plaintiffs are agreeable to Mr. Wedge's dual representation.

■ Plaintiffs also contend that Mr. Wedge's representation of both Debtor and Defendant Law Firm creates the appearance of professional impropriety. Canon 9 of the Model Code [11] provides: "A lawyer should avoid even the appearance of professional impropriety." Canon 9 is designed not to protect the former client, but to preserve the public's confidence in the judicial system and the legal profession. Because the benefits of the rule extend to the public at large, a party to litigation cannot waive its violation. *Cox v. American Cast Iron Pipe Co.*, 847 F.2d at 729.

■ Several courts, however, have noted that the "appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Waters v. Kemp*, 845 F.2d at 265 n. 12.

In *United States v. Hobson,*[12] the Eleventh Circuit articulated a two-part test for disqualification under the appearance of impropriety standard.

First, although there need not be proof of actual wrongdoing, "there must be at lease a reasonable possibility that some specifically identifiable impropriety did in fact occur." Second, "a court must also find that the likelihood of public suspi-

---

sent of the client or clients affected, but only after a full disclosure to them.

**11.** Model Code of Professional Responsibility Canon 9 (1980).

**12.** 672 F.2d 825 (11th Cir.), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982).

cion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case."

672 F.2d at 828. *See also Waters v. Kemp,* 845 F.2d at 266 n. 13.

In *Cox v. American Cast Iron Co.,* the Eleventh Circuit stated:

> In several cases courts have used Canon 4 violations to establish the first prong under Canon 9, since a violation of the attorney-client relationship constitutes a "specifically identifiable appearance of improper conduct."
>
> "A court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interest, which include the litigant's right to freely chosen counsel." ... The relationship [an attorney] has developed with his clients and the substantial energy he has expended in reviewing for and perfecting the appeal and preparing for trial cannot be taken lightly.
>
> "Indeed, the more frequently a litigant is delayed or otherwise disadvantaged by the unnecessary disqualification of [her] lawyer under the appearance of impropriety doctrine, the greater the likelihood of public suspicion of both the bar and the judiciary."

847 F.2d at 731–32.

The Court is not persuaded that Mr. Wedge has committed a "specifically identifiable impropriety" in representing both Debtor and Defendant Law Firm. Debtor and his former law partners are able attorneys and know of the inherent dangers of multiple representation. Each has agreed to this representation. Mr. Wedge asserts that neither of his clients is liable to Plaintiffs. Furthermore, the Court is not persuaded that the likelihood of public suspicion outweighs the professional relationship which Mr. Wedge has developed with Debtor and Defendant Law Firm. If Mr. Wedge was disqualified, Debtor and Defendant Law Firm's legal malpractice insur-

ance carrier would be forced to hire two new law firms. This would not be an efficient allocation of legal resources.

■ Plaintiffs also contend that Mr. Wedge's representation of two clients with different interests will impair his exercise of independent judgment. Plaintiffs contend that the presentation of some defense theories by one client will be detrimental to the interests of the other client.

Canon 5 of the Model Code [13] provides: "A lawyer should exercise independent professional judgment on behalf of a client." DR 5–105(B), (C), and (D) [14] provides:

> (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).
>
> (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.
>
> (D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate, or any other lawyer affiliated with him or his firm may accept or continue such employment.

The State Bar of Georgia Standards of Conduct 36 and 37 provide:

> Standard 36. A lawyer shall not continue multiple employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under Standard 37. A

**13.** Model Code of Professional Responsibility Canon 5 (1980).

**14.** Model Code of Professional Responsibility DR 5–105(B), (C), and (D) (1980).

violation of this standard may be punished by disbarment.

Standard 37. In the situations covered by Standards 35 and 36, a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each. A violation of this standard may be punished by disbarment.

Mr. Wedge asserts that neither of his clients has any liability to Plaintiffs. Both Mr. Wedge and his clients believe that he can adequately represent the interests of each client.

The Court also notes that Debtor and his former law partners consented to the multiple representation by Mr. Wedge. Each is an attorney who can judge for himself any danger which may be involved in multiple representation. The Court is not persuaded that Mr. Wedge should be disqualified under Canon 5.

An order in accordance with this memorandum opinion will be entered this date.