In the Matter of HISTORIC MACON STATION LIMITED PARTNERSHIP, Debtor (Two Cases).

HISTORIC MACON STATION LIMITED PARTNERSHIP, Debtor in Possession, Movant–Plaintiff,

v.

PIEDMONT–FORREST CORPORATION, Defendant–Respondent,

and

Georgia Power Company, United Way Macon and Bibb County, and Macon–Bibb County Convention and Visitors Bureau, Inc., Respondents.

PIEDMONT–FORREST CORPORATION, Plaintiff,

v.

HISTORIC MACON STATION LIMITED PARTNERSHIP and Old Historic Macon Station Corporation, Defendants.

Bankruptcy No. 90–52051.
Adv. Nos. 90–5109, 90–5110.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

May 3, 1991.

Mary Grace Diehl, Nicholas P. Robinson, Atlanta, Ga., and Thomas C. James, III, Macon, Ga., for Piedmont Forrest Corp. and Georgia Power Co.

Michael Weinstock, Atlanta, Ga. and Ward Stone, Jr., Macon, Ga., for Historic Macon Station Ltd. Partnership.

Joy Webster, Office of U.S. Trustee, Macon, Ga., for U.S. Trustee.

Danny L. Akin, Macon, Ga., for Old Historic Macon Station Corp.

Othniel McGehee, Macon, Ga., for Macon–Bibb County Convention and Visitors Bureau, Inc.

H. Ronald Watson, Macon, Ga., for United Way of Macon–Bibb County.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Historic Macon Station Limited Partnership, Debtor, Movant, filed a "Motion for Disqualification" on March 25, 1991.[1] Movant asks this Court to disqualify John W. Griffin and the law firm of Troutman, Sanders, Lockerman & Ashmore ("Troutman, Sanders") from representing Georgia Power Company and Piedmont–Forrest Corporation, Respondents.[2] A hearing was held on April 2, 1991. The Court, having considered the record in the Chapter 11 case and the arguments of counsel, now publishes this memorandum opinion.

In June 1984, Movant entered into a land lease and a building lease with Georgia Power. Georgia Power then conveyed the land and building to Piedmont–Forrest. Piedmont–Forrest is a wholly owned subsidiary of Georgia Power. Piedmont–Forrest succeeded to Georgia Power's interest in the leases. Thus, Movant is the lessee and Piedmont–Forrest is the lessor on the leases at issue. Movant's interest in the leases is its sole asset. Movant subleased a portion of the land and building to Georgia Power.

Movant defaulted on the leases in February or March 1990. Respondents and Movant began settlement negotiations to resolve the default.[3] Respondents were represented by Mr. Griffin. Mr. Griffin is a partner in the law firm of Troutman, Sanders. Respondents agreed to several extensions, which prevented the leases from terminating.

Movant asserts that "[o]n or before April 18, 1990, John W. Griffin drafted a proposed Memorandum of Understanding evi-

---

**1.** Movant filed identical motions in Adversary Proceeding Nos. 90–5109 and 90–5110. On April 23, 1991, the Court entered an order consolidating these adversary proceedings.

**2.** The Court will refer to Georgia Power and Piedmont–Forrest collectively as "Respondents" unless a distinction between the entities is necessary.

**3.** Movant's brief states that it negotiated with Georgia Power. Respondents' brief states that Movant negotiated with Piedmont–Forrest. Both Movant and Respondents agree that Mr. Griffin represented Georgia Power and Piedmont–Forrest.

dencing the parties tentative Settlement Agreement." Therefore, Movant did not request an extension of the next lease termination date, namely April 23, 1990. Respondents contend that the leases terminated on April 24, 1990. Movant contends "that it was the intent and effect of Georgia Power in sending the Memorandum of Understanding dated April 19, 1990 to have [Movant] continue its efforts towards settlement so as to prevent [Movant] from seeking an additional formal extension of the effective date of termination of the leases or from filing Chapter 11 Bankruptcy proceedings before April 23, 1990. This reliance would result in a forfeiture if an agreement is not enforced."

Movant wants to assume the leases under section 365 of the Bankruptcy Code.[4] Respondents contend that Movant cannot assume the leases because the leases were terminated before Movant's bankruptcy case was filed.[5]

The issue before the Court is whether Mr. Griffin and his law firm can represent Respondents in these adversary proceedings.

Movant asserts that Mr. Griffin "should be called as a witness on behalf of Georgia Power. Mr. Griffin was integrally involved in the conversations, dealings, and decision which led to [Movant's] alleged default on the [leases] which is the subject matter of the instant law suit. Mr. Griffin is a key witness to the issue of whether an implicit extension of the April 23, 1990 deadline resulted from the actions of those involved in the negotiations. Additionally, Mr. Griffin is the only fact witness who could be called to testify as to whether termination of the leases was proper. [Movant] contends that Georgia Power failed to reinstitute the notice procedure once foreclosure was instituted. Since the termination of the leases triggered [Movant's] filing of Chapter 11 proceedings, Mr. Griffin's testimony as to the facts surrounding termination of the leases is pivotal to the instant action." Movant asserts that it "unequivocally intends to call Mr. Griffin as a witness in its case in chief."

Respondents assert that it has hired Thomas C. James, III, Esq. and his law firm of Jones, Cork & Miller to serve as trial counsel in these adversary proceedings. Respondents assert that "neither Mr. Griffin nor any other lawyer from Troutman, Sanders would be advocating at the same trial in which another member of the firm might be a material witness." Mr. Griffin and Troutman, Sanders have represented Respondents since 1984 concerning the subject matter of these adversary proceedings.

Respondents assert that Mr. Griffin and Troutman, Sanders should be permitted to serve as counsel in pretrial matters and then step aside during the trial.

This Court has held that the American Bar Association's Code of Professional Responsibility ("ABA Code") governs the conduct of attorneys practicing before this Court. *Hunter v. Head (In re Head)*, 110 B.R. 621, 624 (Bankr.M.D.Ga.1990). In *In re Head*, this Court stated:

> The Court recognizes that the American Bar Association (ABA) replaced its Code of Professional Responsibility with the ABA Model Rules of Professional Conduct in August 1983. *See Waters v. Kemp*, 845 F.2d 260, 263 n. 9 (11th Cir. 1988). The Court notes, however, that the ABA Code is most similar to the Standards of Conduct for Attorneys adopted by the State Bar of Georgia. *See* Rules and Regulations for the Organization and Government of the State Bar of Georgia Part IV, Chapter 1.

110 B.R. at 624 n. 6.

Disciplinary Rule 5–101(B) of the ABA Code provides:

> (B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

---

**4.** 11 U.S.C.A. § 365 (West 1979 & Supp.1991).

**5.** *See* 11 U.S.C.A. § 365(c)(3) (West Supp.1991).

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

DR 5–101(B).

Disciplinary Rule 5–102 of the ABA Code provides:

DR 5–102   Withdrawal as Counsel When the Lawyer Becomes a Witness.

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

DR 5–102.

The ABA Code offers the following reasons for the restrictions on a lawyer-witness:

Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness.  Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case.  An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

Model Code of Professional Responsibility EC 5–9.  *See also Kay v. Ehrler,* — U.S. —, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) (Ethical considerations may make it inappropriate for even a pro se attorney to appear as a witness).

In *Lamborn v. Dittmer,* [6] the Second Circuit Court of Appeals stated:

The test under [DR 5–102(A)] is whether the attorney's testimony could be significantly useful to his client.  If so, he should be disqualified regardless of whether he will actually be called.  [DR 5–102(B)] comes into play where a lawyer's testimony would contradict or undermine his client's factual assertions. Because the courts must guard against tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions under [DR 5–102(B)].

873 F.2d at 531 (citations omitted).

Disciplinary Rule 5–102 of the Georgia Code of Professional Responsibility provides:

When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel.  Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client.

Respondents submit that Mr. James will serve as trial counsel.  Thus, there will be

---

**6.**   873 F.2d 522 (2d Cir.1989).

no "visible association in the courtroom" between Mr. James and Mr. Griffin during the trial. *See Culebras Enterprises Corp. v. Riveria–Rios,* 846 F.2d 94, 100 n. 8 (1st Cir.1988) (Nothing suggests that ABA Model Rule 3.7 condones a witness-lawyer's visible association in the courtroom in the role of co-counsel with his client's trial attorney).

In *Culebras Enterprises Corp.,* the circuit court stated:

The above concerns are absent or, at least, greatly reduced, when the lawyer-witness does not act as trial counsel, even if he performs behind-the-scenes work for the client in the same case. One who is not trial counsel will be unable to vouch for his own credibility, *Duncan v. Poythress,* 777 F.2d 1508, 1515 n. 21 (11th Cir.1985), *cert. denied,* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986); [*International Elecs. v.] Flanzer,* 527 F.2d [1288] at 1294, [ (2d Cir.1975) ], and he will be unable to mix the law and the facts in the presence of court and jury.... Even under DR 5–101(B) some courts have allowed a lawyer-witness to continue as counsel in pretrial matters, though disqualified at the trial. *Moyer v. 1330 Nineteenth Street Corp.,* 597 F.Supp. 14, 17 (D.D.C.1984); *Brotherhood of Railway Carmen v. Delpro Co.,* 549 F.Supp. 780, 789 (D.Del. 1982); *Norman Norell, Inc. v. Federated Department Stores, Inc.,* 450 F.Supp. 127, 130–31 (S.D.N.Y.1978). *See* ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1503 (1983).

846 F.2d at 100.

In *General Mill Supply Co. v. SCA Services, Inc.,* [7] the issue was whether disqualification of counsel extends to all phases of the litigation or only the actual trial. The circuit court stated:

It is therefore unlikely the ABA intended that a lawyer could retain control of everything but the literal "trial" before the jury merely by shielding himself from awareness that he would be a nec-

essary witness until after he was retained.

. . . .

Under the [Federal Rules of Civil Procedure] the ultimate "trial" is connected as a seamless web to the ascertainment of issue at the pretrial proceedings, and particularly to the discovery depositions. Not even the possible confusion of the jury would be averted by exclusion from the "trial" only. The jury would very likely hear depositions, or excerpts from them read, in which [counsel] figured.

697 F.2d at 716.

In *Duncan v. Poythress,* [8] the Eleventh Circuit Court of Appeals stated:

Moreover, in [this] case there are additional reasons why [the witness-lawyer rule] is inapplicable. First, a judge was the trier of fact, thus, there was no danger that the trier of fact could not distinguish between testimony and advocacy. Second, [the witness-lawyer] was not put in the "unseemly and ineffective position of arguing her own credibility" because she did not act as an advocate during the course of the trial, rather, such duties were performed by other lawyers. *Cf. Bottaro v. Hatton Associates,* 680 F.2d 895 (2d Cir.1982); *International Elecs. Corp.,* 527 F.2d at 1294.

777 F.2d at 1515 n. 21.

In the case at bar, Respondents assert that Mr. Griffin and Troutman, Sanders should be allowed to continue as counsel in pretrial matters. There will be no "visible association in the courtroom" between Mr. Griffin and Troutman, Sanders and Respondents' trial counsel, Mr. James.

The adversary proceedings will be tried in a bench trial. Thus, there is no danger that the trier of fact cannot distinguish between Mr. Griffin's testimony and advocacy. Furthermore, Mr. Griffin and Troutman, Sanders will not act as advocates during the course of the trial. This duty will be performed by Respondents' trial

---

**7.** 697 F.2d 704 (6th Cir.1982). Movant mistakenly cites this decision as an Eleventh Circuit Court of Appeals decision.

**8.** 777 F.2d 1508 (11th Cir.1985) (*en banc* ), *cert. denied,* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986).

counsel. *See Duncan v. Poythress*, 777 F.2d at 1515 n. 21.

The Court is persuaded that Mr. Griffin and Troutman, Sanders can continue as counsel for Respondents in pretrial matters. An order in accordance with this memorandum opinion will be entered this date.

### ORDER ON NO. 90–5110

In accordance with the memorandum opinion entered this date; it is

ORDERED that the "Motion for Disqualification" filed on the 25th day of March, 1991, by Historic Macon Station Limited Partnership hereby is denied.

SO ORDERED.