**CULEBRAS ENTERPRISES CORPORATION, et al.,**
Plaintiffs, Appellants,

v.

**Miguel A. RIVERA–RIOS, et al.,**
Defendants, Appellees.

Nos. 87–1562, 87–1659.

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1987.

Decided May 9, 1988.

Jaime Sifre–Rodriguez with whom Cepeda, Sanchez–Betances & Sifre, Hato Rey, P.R., was on brief for plaintiffs, appellants.

Reina Colon De Rodriguez, Asst. Sol. Gen., Dept. of Justice, with whom Rafael Ortiz Carrion, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on brief for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This is an attorneys' fees case which presents a novel issue: can plaintiffs, two of whose attorneys rendered pretrial legal services at a time when it was known the attorneys would be called as plaintiffs' witnesses at trial, recover fees for those services under 42 U.S.C. § 1988 (1982)? The district court disallowed the challenged fees as a sanction for the two attorneys' believed unethical conduct. *Culebras Enterprises Corp. v. Rivera Rios*, 660 F.Supp. 540 (D.P.R.1987). It concluded that they had violated the canons of ethics by rendering pretrial services in a case in which they would later be witnesses. Because in these circumstances we do not find that the attorneys violated the relevant canons of ethics, we vacate the district court's judgment and remand.

## I.

Plaintiffs-appellants Culebras' Enterprises, Inc., Vango, Inc., Nango, Inc., and Covan, Inc., are landowners on the island of Culebra, off the east coast of Puerto Rico. In 1974 they subdivided their property into agricultural-purposes-lots of five cuerdas [1] and attempted to sell them. On December 1, 1974, the land was zoned by the Puerto Rico Planning Board primarily as "P," for public use only, and the rest as "RO–25–C," allowing only one agricultural residence per 25 cuerdas. The effect of these classifications, plaintiffs alleged, was to "freeze" the property without any compensation for an indefinite time, making the land unmarketable. Plaintiffs filed this 42 U.S.C. § 1983 (1982) action in 1979 against the members of the Puerto Rico Planning Board and the Culebra Conservation and Development Authority, alleging that the "P" and "RO–25–C" zoning amounted to an unconstitutional deprivation of their property without just compensation. Plaintiffs sought inverse condemnation damages and an injunction restraining defendants from further depriving them of their property.

After extensive settlement negotiations, the parties submitted a Partial Settlement Stipulation dated August 16, 1984. Pursuant to the settlement, all "P" land was rezoned "RO–25–C." In addition, defendants specifically agreed to allow plaintiffs to proceed with single residence development of their original five-cuerda lots, notwithstanding the conflicting zoning requirement. The immediate effect of the agreement was to make plaintiffs' land marketable again. The landowners' rights to damages and attorneys' fees was reserved for trial. On June 28, 1985, the

1. A cuerda is 3930.396 square meters in area, slightly less than an acre.

district court denied plaintiffs' claim for damages and attorneys' fees. In light of our opinion in *Ortiz De Arroyo v. Romero Barcelo*, 765 F.2d 275 (1st Cir.1985), the district court reconsidered its decision disallowing attorneys' fees. The court again dismissed the damages claim but reversed itself on the denial of attorneys' fees, and ordered plaintiffs to file a verified petition for attorneys' fees. The dismissal of the damages claim was appealed to this court. We affirmed the district court. *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506 (1st Cir.1987).

Plaintiffs requested $241,601.50 in attorneys' fees and $32,714.79 in costs. A total of five attorneys, five law clerks, and one paralegal claimed fees for working on this case at various times between 1978 and 1984. Edward M. Borges and Raymond C. O'Neill, partners in the law firm of O'Neill & Borges, personally accounted for $101,271.50 of the requested fees. Another member of O'Neill & Borges, Walter Klasson, accounted for $62,425. Two other attorneys, Max Ramirez de Arrellano and Jaime Sifre Rodriguez, who were counsel of record and who are not members of O'Neill & Borges, claimed fees totalling $56,815. The remaining $21,090 was ascribed to work done by law clerks and a paralegal.

O'Neill and Borges are stockholders and officers of the four plaintiff corporations and had been expected to testify at trial. At an early stage of the litigation, they withdrew as counsel of record and engaged the Sifre firm to represent plaintiffs at trial. Sifre was thereafter counsel of record. Although not plaintiffs' counsel of record, and although never planning to act or acting as courtroom counsel, O'Neill and Borges performed much of the pretrial work, including discovery, for plaintiffs. The district court concluded that their participation as lawyers had been unethical and therefore, as a sanction, disallowed plaintiffs' request for attorneys' fees for their work and for the work of others associated with the law firm of O'Neill and Borges. In addition, the district court reduced by 50 percent the attorneys' fees of the other attorneys based on the fact that plaintiffs had only partially prevailed. Plaintiffs appeal from the district court's judgment denying the attorneys' fees requested for the work done by O'Neill and Borges and their law firm. Plaintiffs also appeal from the district court's reduction by 50 percent of the attorneys' fees of the other attorneys.

## II.

The district court denied fees for O'Neill, Borges, and other members of the O'Neill & Borges law firm, on the ground that, since they were potential witnesses, their participation as lawyers was unethical even though others were counsel of record and were designated to serve as trial counsel. The court relied on Rule 5–101(B) of the ABA Code of Professional Responsibility[2]

**2.** Disciplinary Rule 5–101(B) of the ABA Code of Professional Responsibility (DR 5–101(B)) provides,

(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the lawyer or his firm as counsel in the particular case.

Other related rules of the ABA Code are DR 5–102(A) and (B) which provide:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in

and Canon 22 of the Puerto Rico Canons of Professional Ethics.[3] These canons embody aspects of the "advocate-witness" ethical rule, which limits the right of a lawyer to represent a client once it appears that he or she may be called as a witness at trial.

In the instant case, O'Neill and Borges expected all along to be witnesses at trial. That they were not in fact called as witnesses was because aspects of the case requiring their testimony were settled prior to trial. To avoid running afoul of the advocate-witness rule, plaintiffs had engaged as their trial counsel another law firm. Nonetheless, O'Neill and Borges performed much pretrial legal work for plaintiffs. Plaintiffs now seek compensation for that work as "prevailing parties" under 42 U.S.C. § 1988.

Plaintiffs complain that in denying compensation to O'Neill and Borges the district court applied the wrong ethical canon. They point out that the local rules of the United States District Court for the District of Puerto Rico incorporate only the recent, more permissive Model Rules of Professional Conduct of the ABA but not the earlier ABA Code of Professional Responsibility. Without explanation, the district court relied upon the latter in deciding this case. The pertinent rule of the Model Rules of Professional Conduct, Rule 3.7,[4] only prohibits an attorney-witness from acting as "advocate at a trial." Plaintiffs argue that this rule did not prevent them from acting as plaintiffs' "solicitors" prior to the trial.

It is well settled in this circuit that the district court has the duty and responsibility to supervise the conduct of attorneys who appear before it, and that this court will review the district court's supervisory rulings under an "abuse of discretion" standard. *Fiandaca v. Cunningham*, 827 F.2d 825, 828 (1st Cir.1987); *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir.1984). Denial of attorneys' fees may be a proper sanction for violation of an ethical canon. *Rybicki v. State Board of Election*, 584 F.Supp. 849, 860 (N.D.Ill.1984). It is clear, however, that, when sanctioning an attorney for violating the advocate-witness rule, a district court must strike a fair balance between a party's right to select the lawyer of his preference [5] and the objectives of the advocate-witness rule under the facts of the particular case. *Bottaro v. Hatton Associates*, 680 F.2d 895, 897 (2d Cir.1982); *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 717 (6th Cir.1983) (Engel, J., concurring in part and dissenting in part). *See also Security General Life Insurance v. Superior Court*, 718 P.2d 985, 988 (Ariz.1986).

---

his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

3. Canon 22 of the Puerto Rico Canons of Professional Ethics, P.R. Laws Ann. tit. 4, App. IX (1978), provides,

Except when essential to the ends of justice, the lawyer should avoid testifying in court in behalf or in support of his client. When a lawyer is a witness of his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to another counsel.

Likewise, a lawyer should withdraw from the representation of his client when he finds out that the lawyer himself, one of his partners, or a lawyer in his firm, may be called to testify against his client.

4. Rule 3.7 of the Model Rules of Professional Conduct of the ABA (Rule 3.7) reads,

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

5. A party's normal right to be represented by counsel of his or her own choosing is recognized in 28 U.S.C. § 1654 (1982), which states,

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

Here, we agree with plaintiffs that the district court erred in relying upon DR 5–101(B) of the ABA Code of Professional Responsibility. The district court should have applied the less restrictive Rule 3.7 of the Model Rules of Professional Conduct adopted by the ABA in 1983 and subsequently incorporated in the local rules of the Puerto Rico District Court. *See In re American Cable Publication, Inc.*, 768 F.2d 1194, 1196 (10th Cir.1985); *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d at 717 n. 1; *Freschi v. Grand Coal Venture*, 564 F.Supp. 414, 417 n. 2 (S.D.N.Y.1983). While DR 5–101(B) states that a lawyer "shall not accept *employment*" if he or a member of his *law firm* ought to be called as a witness, Rule 3.7 only prohibits an attorney from acting *"as advocate at a trial"* if he ought to be called as witness. (Emphasis supplied.) O'Neill and Borges did not assume, and did not plan to assume, the role of "advocate at a trial" in the case.

■ Absent promulgation by means of a statute or a court rule, ethical provisions of the ABA or other groups are not legally binding upon practitioners. *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1293 (2d Cir.1975). Local Rule 211.-4(b) of the United States District Court for the District of Puerto Rico, where this action was filed, and which was adopted in 1984 and was in force at the time the district court awarded attorneys' fees in this case, states that

Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the rules of professional conduct as adopted by this Court and which are attached hereto (Model Rules of Professional Conduct adopted by the American Bar Association on August 2, 1983), shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship or in the course of judicial proceedings.

The ABA's earlier drafted Code of Professional Responsibility was never at any time, to our knowledge, specifically adopted by the United States District Court for the District of Puerto Rico. Former Rule 33.IV.B of the Puerto Rico District Court's Local Rules, which preceded Local Rule 211.4(b), and which was in effect in 1979, at the time this action was brought, referred only to "the Code of Professional Responsibility adopted by the Supreme Court of the Commonwealth of Puerto Rico, as amended from time to time by that state court." The relevant rule of the Puerto Rico Code of Professional Responsibility was Canon 22.[6] The Supreme Court of Puerto Rico has never adopted either the ABA Code of Professional Conduct or the ABA Model Rules of Professional Conduct. Therefore, when this action was commenced, DR 5–101(B) was without legal force as to these attorneys.

■ Defendants argue that the district court correctly applied the ABA Code notwithstanding its lack of incorporation in any relevant local rule because in 1979, when plaintiffs brought suit, the ABA had yet to adopt the Model Rules and the Code was the ABA's only existing standard. But as we have said, the ABA's ethical canons do not have the force of law simply by virtue of their own weight. *International Electronics*, 527 F.2d at 1293. Courts, to be sure, might in special circumstances use a code of ethics developed by the ABA as a guide in the absence of any definitive standard. But we do not believe that DR 5–101(B) can properly be invoked for that purpose here. This court has stated that, in acting upon a motion to disqualify or sanction an attorney, the district court should generally apply the ethical standard that is in effect at the time of the motion. *Kevlik v. Goldstein*, 724 F.2d at 847 n. 4. Reference to the most recent standard is especially appropriate where the new rule, like the district court's current one, Rule 3.7, is more lenient than the alleged earlier one. The canons of ethics codify rules of conduct for attorneys that the legal community and the courts deem to be appropriate at a certain time. Adop-

---

**6.** *See* note 3, *supra.*

tion of a new rule approving conduct that once was regarded as improper by the legal community and the courts tends to remove the reasons for enforcing the earlier, harsher standard. This is all the more true where, as here, the earlier, stricter ABA standard was never adopted as a local court rule. In the instant case, at the time plaintiffs filed their request for attorneys' fees and defendants opposed it on ethical grounds, and at the time the district court entered its order sanctioning O'Neill and Borges, the pertinent rule that was in force in the district court of Puerto Rico was Rule 3.7 of the Model Rules. O'Neill's and Borges's conduct should be evaluated under this rule. The district court erred in applying DR 5–101(B) of the ABA Code rather than Rule 3.7 of the ABA Model Rules.[7]

Turning to Rule 3.7, neither O'Neill nor Borges intended to act as an "advocate at a trial." Anticipating that O'Neill and Borges would be called as witnesses, plaintiffs hired another law firm to be counsel of record and to act as trial attorneys. O'Neill and Borges would not themselves have actively participated in the trial. The two attorneys did, however, perform much of the case-related *pretrial* work for plaintiffs including discovery, services for which they now seek compensation. The question is whether the prohibition against acting as "advocate at a trial" should be read as broadly prohibiting the rendition of case-related out-of-court services prior to trial. We think not.

The ABA official comment to Rule 3.7 emphasizes that what the rule tries to prevent is a situation where a witness at trial is also the trial lawyer.

Combining the roles of *advocate* and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and the client.

The opposing party has proper objection where the combination may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, *while an advocate is expected to explain and comment on evidence given by others.* It may not be clear whether a statement by an advocate-witness should be taken as proof or as analysis of the proof. (Emphasis added.) Comments to Rule 3.7 have construed the rule as allowing the specific arrangement made here by O'Neill and Borges with the Sifre firm. *Annotated Model Rules of Professional Conduct, ABA,* Rule 3.7, Legal Background, at 252 (1984) ("Rule 3.7(a) would not prevent a witness-lawyer from associating with another lawyer who will serve as trial counsel."); R. Wydick, *Trial Counsel as Witness: The Code and The Model Rules,* 15 U.C. Davis L.Rev. 651, 679 n. 147 (1982) (under Rule 3.7 a lawyer-witness may obtain "the client's consent to associate an outside lawyer as trial counsel. The two lawyers can then divide the fee....").

That Rule 3.7 is limited to situations where the lawyer-witness acts as trial counsel is underscored by the purposes most often cited as being served by the general advocate-witness rule: Three of these are 1) the possibility that, in addressing the jury, the lawyer will appear to vouch for his own credibility; 2) the unfair and difficult situation which arises when an opposing counsel has to cross-examine a lawyer-adversary and seek to impeach his credibility; and 3) the appearance of impropriety created, *i.e.,* the likely implication that the testifying lawyer may well be distorting the truth for the sake of his client. *Bottaro v. Hatton Associates,* 680 F.2d at

---

7. The district court also cited in its opinion Canon 22 of the Puerto Rico Canons of Professional Ethics, 660 F.Supp. at 543 n. 3; *see* note 3, *supra.* We note, however, that Local Rule 211.4(b) does not specifically incorporate the Puerto Rico Canons. We need not, in any event, resolve here whether and to what degree an attorney appearing before the Puerto Rico federal district court is censurable by that court for noncompliance with the Puerto Rico Canons. O'Neill's and Borges's conduct would not seem to violate the Puerto Rico Canons. Canon 22 of the Puerto Rico Canons states that if a lawyer ought to testify at trial on behalf of his client, "he should leave the *trial of the case* to another counsel." (Emphasis added.) Viewed strictly, O'Neill's and Borges's actions can be said to have complied literally with that requirement here.

897; *International Electronics v. Flanzer*, 527 F.2d at 1294; *MacArthur v. Bank of New York*, 524 F.Supp. 1205, 1208–09 (S.D.N.Y.1981); *see* 6 J. Wigmore, *Evidence* § 1911 (Chadbourn rev. 1976). ABA background materials to Rule 3.7 conclude that the "most cogent rationale" for the rule is 1) the interest in protecting the integrity of the advocate's professional role by eliminating the opportunity of mixing law and fact, and 2) preventing a lawyer from injecting his or her personal belief as to the cause into the lawyer's argument to the jury. *Annotated Model Rules of Professional Conduct, ABA*, Rule 3.7, Legal Background, at 251–52. *See* A. Enker, *The Rationale of the Rule that Forbids a Lawyer to be Advocate and Witness in the Same Case*, 1977 Am.B. Found. Research J. 455.

The above concerns are absent or, at least, greatly reduced, when the lawyer-witness does not act as trial counsel, even if he performs behind-the-scenes work for the client in the same case.[8] One who is not trial counsel will be unable to vouch for his own credibility, *Duncan v. Poythress*, 777 F.2d 1508, 1515 n. 21 (11th Cir.1985), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986); *Flanzer*, 527 F.2d at 1294, and he will be unable to mix the law and the facts in the presence of court and jury. Opposing counsel, when cross-examining, will not have to cope with the lawyer-witness's enhanced status as trial counsel. And the appearance to jurors and others that the lawyer-witness may be distorting the truth will at least be diminished so long as he is not also seen to perform in the high visibility position of trial counsel. *See General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d at 717. Finally there is no

danger that the lawyer-witness might inject his or her personal belief into the advocate's argument to the jury. Even under DR 5–101(B) some courts have allowed a lawyer-witness to continue as counsel in pretrial matters, though disqualified at the trial. *Moyer v. 1330 Nineteenth Street Corp.*, 597 F.Supp. 14, 17 (D.D.C.1984); *Brotherhood of Railway Carmen v. Delpro Co.*, 549 F.Supp. 780, 789 (D.Del.1982); *Norman Norell, Inc. v. Federated Department Stores, Inc.*, 450 F.Supp. 127, 130–31 (S.D.N.Y.1978). *See* ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1503 (1983).

We observe that, except for DR 5–101(B) of the Model Code, the advocate-rule has usually been codified so as to focus its coverage upon situations where the lawyer-witness is also the trial lawyer. The advocate-witness rule was first codified by the American Bar Association in 1908. Former Canon 19 of the ABA 1908 Canons of Professional Ethics provided,

> When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, *he should leave the trial of the case* to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client.

(Emphasis added.) *See United States v. Birdman*, 602 F.2d 547, 555 n. 11 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). *See also* Note, *The Advocate–Witness Rule: If Z, then X. But Why?*, 52 N.Y.U. L.Rev. 1365, 1371 n. 31 (1977).[9] This canon was replaced in 1976 by DR 5–101(B), DR 5–102(A) and DR 5–102(B) of the ABA Code, with a much

---

**8.** Nothing herein is meant to suggest that Rule 3.7 condones a witness-lawyer's visible association in the courtroom in the role of co-counsel with his client's trial attorney.

**9.** This language is very similar to that adopted by the Supreme Court of Puerto Rico in Canon 19 of the Puerto Rico Canons of Professional Ethics. *See* note 3, *supra*. We recognize that the words "the trial of the case," if read broadly, might arguably be construed to include pre-trial discovery and such services in aid of a trial as legal research and brief-writing, but for reasons

discussed, we reject this broad reading. We recognize that a deposition might be put in evidence at trial showing the name of a trial witness acting in the role of attorney at the deposition. This problem could ordinarily be solved, however, by redacting the attorney-witness's name from the deposition. While conceivably situations might arise requiring a different outcome, we do not believe that the Rule 3.7 bar against being an "advocate at a trial" normally prohibits a witness-attorney from acting as counsel in pretrial discovery.

broader scope.[10] Finally, in 1982, by adopting Rule 3.7 of the Model Rules the ABA retreated to language even narrower than its original position prohibiting a lawyer-witness only from acting as "advocate at a trial."

Had the present case gone to trial, and had O'Neill and Borges actually testified,[11] none of the evils the rule intends to avoid would have occurred. Not only had substitute trial counsel been engaged, but it would have been evident to everybody when O'Neill and Borges took the stand that each had a personal interest in the outcome of the case. O'Neill and Borges are principal shareholders and officers of plaintiff corporations. Though not nominal plaintiffs, their position is very similar to that of a lawyer who is at the same time witness and party. Under such circumstances, the general purposes of the advocate-witness rule are not applicable. *In re American Cable Publication, Inc.,* 768 F.2d at 1515 n. 21; *Huertas v. East River Housing Corp.,* 662 F.Supp. 282, 286 (S.D. N.Y.1986), *vacated and remanded on other grounds,* 813 F.2d 580 (2d Cir.1987). O'Neill's and Borges's "interest in the outcome of the litigation [was] clear to the trier of facts," *Bottaro v. Hatton Associates,* 680 F.2d at 897, and to the public. Therefore, "if the public ... might suspect [them] of distorting the truth it would not be because [they are] lawyer[s] but because [they are an interested party]." *Flanzer,* 527 F.2d at 1294. Not having the role of trial attorneys, they would not be viewed as vouching for their own credibility. *Id.* at 1288. Finally, counsel for defendants would not be in any more disadvantageous situation when cross-examining O'Neill and Borges than when cross-examining any other attorney who was not, at the same time, trial counsel.

We conclude that the conduct of O'Neill and Borges did not violate Rule 3.7. Especially in the absence of any of the harms the advocate-witness rule is meant to avoid, we believe that the district court abused its discretion in refusing to allow attorneys' fees in regard to O'Neill's, Borges's and their firm associates' services as a sanction for the purported violation of the advocate-witness rule.

### III.

Defendants argue that, if O'Neill and Borges are allowed to recover, defendants will suffer prejudice because they did not know that O'Neill and Borges were acting as plaintiffs' lawyers. There is no element of injustice or surprise here. Somebody had to be in charge of representing plaintiffs, and defendants, as the losing parties, have to pay for the attorneys' fees. If not done by O'Neill and Borges, this part of the job would have been done by other attorneys. The fact that O'Neill and Borges were on the plaintiffs' attorneys' team should not affect the total amount of attorneys' fees owed. Defendants were not prejudiced.

■ What defendants are really arguing is that the amount requested for attorneys' fees was inflated. That is a valid concern but a completely different issue. On remand the district court, in reaching the lodestar figure, will evaluate plaintiffs' request for attorneys' fees and determine whether the time allegedly spent and the

---

**10.** Even under the ABA Code the lawyer-witness did not have to withdraw completely from employment in a case in every situation. While DR 5–101(B) bars a lawyer from accepting employment in "contemplated or pending litigation, then knowing he may be called as a witness," if the attorney learns that he ought to be called as a witness after he has accepted employment, DR 5–102(A) only expressly requires him to withdraw *"from the conduct of the trial."* *General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d at 715. In spite of this language, the Sixth Circuit extended the prohibition of DR 5–101(B) as applying in blanket fashion to all the phases of the litigation, including pretrial

activities. *But see* the cogent dissenting opinion by Judge Engel arguing that DR 5–101(B) should be limited only to the actual litigation of the case. *Id.* at 716. *See also Moyer v. 1330 Nineteenth Street Corp.,* 597 F.Supp. at 17; *Norman Novell, Inc. v. Federated Department Stores, Inc.,* 450 F.Supp. at 130–31.

**11.** The fact that O'Neill and Borges were not called as witnesses is irrelevant; what matters is that they were "likely to be a necessary witness." Rule 3.7. *Cf. MacArthur v. Bank of New York,* 524 F.Supp. at 1208.

requested hourly rate are justified. Given O'Neill's and Borges's multiple roles as attorneys, shareholders, officers of plaintiff corporations, and potential witnesses, the district court must limit compensation to their work done as attorneys. They are not entitled to attorneys' fees for the time spent in work related to their positions as officers of the corporations nor for any time spent in preparing their own testimony for trial. *Shakman v. Democratic Organization of Cook County*, 634 F.Supp. 895, 901 (N.D.Ill.1986).

## IV.

■ The district court reduced by 50 percent the lodestar figure of the other attorneys after concluding that plaintiffs had only partially prevailed. Plaintiffs argue that the court erred because they obtained basically what they wanted, and because it is almost impossible to separate the work done in pursuing the damages action (the one they lost) from the other claims. Defendants argue that we should affirm because the amount warranted is more than reasonable. They argue that plaintiffs' level of success can only be classified as "de minimis." [12]

Plaintiffs filed this action requesting damages and injunctive rezoning. The district court was correct in concluding that "they received neither." 660 F.Supp. at 550. There was no declaration that "P" and "RO-25-C" zoning are unconstitutional. As a matter of fact, plaintiffs' land is still classified "RO-25-C." The only concession that the government made was to "allow plaintiffs to proceed with single residence developments of their previously subdivided lots, notwithstanding the conflicting zoning requirements." *Id.* That remedy, the district court concluded, has made plaintiffs' land marketable again.

Although plaintiffs did not obtain everything they requested, they did obtain one of the principal results they were seeking: the land is again marketable. To that extent they are prevailing parties for attor-

neys' fees purposes. *Exeter–West Greenwich Regional School District v. Pontarelli*, 788 F.2d 47 (1st Cir.1986); *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978). However, the fact that they were the prevailing parties does not mean that they can recover for all the time spent in this litigation. The Supreme Court has clearly stated that in assessing a claim for attorneys' fees under section 1988 the district court must exclude from the fees application all hours expended on unsuccessful claims that are distinct from successful claims. *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). On the other hand, if the

> plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Id.* at 436, 103 S.Ct. at 1941.

It is well settled that the amount of an award of attorneys' fees is to be determined by the district court and the role of an appellate court is to review for errors of law or abuse of discretion. *Furtado v. Bishop*, 635 F.2d 915 (1st Cir.1980). In the instant case the district court, which was much more familiar with the controversy and in a better position to assess plaintiffs' degree of success and to what extent the attorneys' labor was related and pertinent to the remedy plaintiffs obtained, reduced the lodestar figure by 50 percent. The district court acted within its sound discretion when it effected the reduction.

## V.

■ Plaintiffs also appeal from the district court's refusal to allow costs for the

---

**12.** Defendants argue that as a matter of law plaintiffs are not prevailing parties for attorneys' fees purposes. However, defendants have not cross-appealed from the district court's determination that plaintiffs are prevailing parties.

appraisal of the land and a report prepared by plaintiffs' economist relating to the damages suffered by plaintiffs as a consequence of the zoning imposed by defendants. The attorneys' reasonable and necessary costs and expenses may be awarded to a prevailing party pursuant to 42 U.S.C. § 1988. *Palmigiano v. Garrahy,* 707 F.2d 636, 637 (1st Cir.1983). However, the reasonable costs that can be awarded pursuant to section 1988 are only those related to plaintiffs' successful claims. In the instant case the items disallowed by the district court were related to the damages claim. Plaintiffs did not prevail on that claim. The district court did not abuse its discretion in refusing to allow the reimbursement of those expenses.

That part of the judgment reducing the lodestar figure by 50 percent is affirmed. That part of the judgment denying attorneys' fees to Raymond C. O'Neill, Edward M. Borges, Walter Klasson, and any other attorney or paralegal of the firm of O'Neill & Borges is vacated and remanded for further proceedings not inconsistent herewith.

*So ordered.*