**Thomas HILL et al., Plaintiffs,**

v.

**CULEBRA CONSERVATION AND DEVELOPMENT AUTHORITY, et al., Defendants.**

**Civil No. 08–1039 (GAG/BJM).**

United States District Court, D. Puerto Rico.

Jan. 27, 2009.

Hilda L. Quinones–Rivera, Adsuar Muniz Goyco Seda & Perez–Ochoa, PSC, Roberto Lefranc–Morales, Martinez Alvarez, Menendez Cortada & Lefranc Romero PSC, San Juan, PR, for Plaintiffs.

Carlos E. Geigel, Urb. La Alameda, Ismael Rodriguez–Izquierdo, Ismael Rodriguez Izquierdo Law Office, San Juan, PR, for Defendants.

### OPINION AND ORDER

BRUCE J. McGIVERIN, United States Magistrate Judge.

Plaintiffs Thomas Hill, Dorothy Hill, and the legal partnership formed by them (collectively "Hill" or "plaintiffs") moved to disqualify Carlos Géigel Bunker ("Géigel") as counsel for defendants Culebra Conservation and Development Authority ("CCDA") and the Municipality of Culebra (the "Municipality"). (Docket No. 64). Mr. Géigel is also a defendant in the case. Defendants opposed, styling their opposition as a "Motion to Quash Counsel Disqualification Request." (Docket No. 68). Plaintiffs submitted a motion supplementing their request to disqualify Géigel (Docket No. 96), defendants opposed, again in the form of a motion to quash (Docket No. 99), and plaintiffs replied. (Docket No. 101). Defendants submitted an Informative Motion Regarding Disqualification Request (Docket No. 104), and plaintiffs sought leave to reply. (Docket Nos. 106, 107). The presiding district judge referred the motions to me for disposition. (Docket Nos. 65, 98, 105, 108).

### FACTUAL AND PROCEDURAL BACKGROUND

In this takings case brought under 42 U.S.C. § 1983 ("Section 1983"), plaintiffs allege, *inter alia,* that defendants deprived them of the enjoyment of their property by removing a fence from the property on the island of Culebra. (Docket No. 16). Plaintiffs allege that in late 2004 they constructed a wooden fence to keep out intruders passing by on an adjacent dirt road and a walking path leading to the waterfront. (Docket No. 43). Beginning in March 2007, they began to receive notices from Géigel, acting as representative of the CCDA, informing them that the

fence violated CCDA's enabling act.[1] (*Id.*). Plaintiffs claim that on December 20, 2007, Géigel, acting as an agent of the CCDA and the Municipality, entered their property without prior notice and removed a substantial portion of the fence. (Docket No. 43). Plaintiffs brought suit against the CCDA, the Municipality, Culebra's mayor (the "Mayor") (collectively, the "government defendants"), and Géigel. (*Id.*).

Géigel initially appeared as counsel for all defendants, himself included. (Docket No. 3). In April 2008, Géigel moved to withdraw as counsel, noting that "[a]lthough at the summary [judgment] motion level defendants feel there is no conflict of interest, if this case proceeds to discovery, this attorney would voluntarily withdraw from the case to avoid any possible conflict of interest."[2] (Docket No. 16). The court granted his motion to withdraw (Docket No. 18), and the next month José Durand Carrasquillo ("Durand") appeared as counsel for the Municipality and Ismael Rodríguez–Izquierdo ("Rodríguez") appeared as counsel for CCDA. (Docket No. 19). However, Durand later moved to withdraw as counsel for the Municipality, citing "unreconcilable differences" between counsel and client. (Docket No. 57). The court denied the motion without prejudice until new counsel filed a formal appearance. (Docket No. 58). Géigel then moved to appear on behalf of all defendants, stating that he and Rodríguez would jointly represent all defendants with Géigel serving as lead counsel. (Docket No. 60). The court granted both Géigel's motion and Durand's renewed motion to withdraw. (Docket No. 61, 62, 63).

Plaintiffs then moved to disqualify Géigel as counsel for co-defendants CCDA and the Municipality.[3] (Docket No. 64). Plaintiffs argue that (1) Géigel has a conflict of interest with his clients and co-defendants, the government defendants, and (2) Géigel is a material witness and may not act as advocate at trial pursuant to the "advocate-witness rule." (*Id.*).

Defendants opposed, arguing that no conflict of interest exists and, in any event, defendants consent to representation by Géigel. (Docket No. 68 (the "first opposition brief")). Defendants included in their brief a transcript of minutes from a meeting of the Board of Directors for CCDA, at which the Mayor was also present. (*Id.*). The minutes indicate that Géigel informed the other defendants that "since he was requested by the mayor to command all operations to open illegal blockages to the beaches of Culebra and the resources of [CCDA] and the Municipality were under his direct command for said operations, there is no conflict of interest between the defendants." (*Id.*). The Mayor and the CCDA Board of Directors then, according to the minutes, unanimously authorized Géigel to represent all defendants and to serve as lead counsel. (*Id.*). The first opposition brief did not address plaintiffs'

---

**1.** The Culebra Conservation and Development Act, 21 L.P.R.A. 890 *et seq.*, provides in relevant part, "No development whatsoever shall be approved that may interfere with the free access of the public to the sea and beaches in any way, nor any such developments that may involve or imply the private or exclusive use, or both, of the sea and beaches in detriment or prejudice of the people's legitimate right to the use and enjoyment thereof." Culebra Conservation and Development Act, 21 L.P.R.A. § 890e (2005).

**2.** Defendants moved for summary judgment on qualified immunity grounds in lieu of answering the complaint (Docket No. 3), which the court denied. (Docket No. 14).

**3.** Although plaintiffs have not moved to disqualify Géigel from representing the Mayor, the court finds that the same concerns apply to that representation and therefore includes the Mayor in its analysis of plaintiffs' motion.

argument concerning the advocate-witness rule.

Plaintiffs then filed a supplemental motion to disqualify Géigel, asserting new evidence in support of their earlier motion. (Docket No. 96). Plaintiffs argued that Géigel had induced or allowed his clients to tender false testimony, which further supported their argument that a conflict of interest existed. (*Id.*). Specifically, plaintiffs claimed that while defendants had testified that Géigel was under contract with both CCDA and the Municipality at the time of the alleged events, plaintiffs have obtained evidence, in the form of a Comptroller's Office certification, that the Municipality did not have record of a service contract with Géigel on that date. (*Id.*). Second, plaintiffs argued that the advocate-witness rule was further implicated by Géigel's response to plaintiffs' interrogatories, on behalf of all defendants, based on his knowledge of the events giving rise to the claims in the complaint. (*Id.*). Finally, plaintiffs contended that defendants' consent was flawed because (1) it was based solely on the information provided by Géigel; and (2) it was inconsistent with the express terms of Géigel's professional services contract with CCDA, which required him to "avoid the appearance of the existence of conflicting interests." (*Id.*).

Defendants opposed the supplemental motion (Docket No. 99 (the "second opposition brief")), arguing that Géigel's representation did not violate the advocate-witness rule because his co-counsel would represent the other defendants at trial, and that the Mayor made no false statements because Géigel has represented both the CCDA and the Municipality at the same time "regardless of which agency paid for his services at different times." (*Id.*). Defendants also provided a cursory response to the issue of whether informed consent had been properly given. (*Id.*).

Plaintiffs replied to the second opposition, asserting, *inter alia,* that: (1) defendants had not challenged the validity of the Comptroller's Office certification; (2) defendants' brief bolstered the conflict of interest concerns in stating, "this case is about attorney Géigel defending his actions with regards to the [alleged events]"; and (3) defendants' assertion that Géigel represented two agencies under a single contract raised a legal issue.[4] (Docket No. 101).

## DISCUSSION

In this district, Local Rule 83.5(a) adopts the Rules of Professional Conduct ("Model Rules") of the American Bar Association ("ABA") to govern the conduct of attorneys admitted to practice before this court. D.P.R.R. 83.5(a). Plaintiffs challenge Géigel's representation of the government defendants on the basis of Model Rules 1.7 and 3.7. The court will consider each Rule in turn.

### A. Model Rule 1.7

Model Rule 1.7 provides, in relevant part, that a lawyer "shall not represent a client if the representation involves a concurrent conflict of interest." A conflict of interest exists where there is a "significant risk" that the representation of a client may be "materially limited" by, *inter alia,* "a personal interest of the lawyer." Model Rule 1.7 (2002). Where such a conflict exists, a lawyer may represent the client only if (1) the lawyer reasonably believes

4. In the continued back-and-forth between the parties, defendants then submitted an "Informative Motion Regarding Disqualification Request" (Docket No. 105)—a sur-reply, in essence, which generated a reply. (Docket No. 106). The issues raised in these filings are not material and do not affect the outcome of this dispute.

that he will be able to provide competent and diligent representation to each affected client; (2) the representation is not affected by law; (3) the lawyer does not represent a client asserting a claim against another client represented by the lawyer; and (4) each affected client gives informed consent, confirmed in writing. *Id.*

With respect to this rule, I must address three issues: (1) whether plaintiffs have standing to raise this issue; (2) whether Géigel's simultaneous representation creates a conflict of interest; and if so, (3) whether the government defendants have properly consented to the representation.

### 1. Standing to Challenge Representation

Defendants argue that plaintiffs' motion to disqualify is intended only to disrupt the proceedings of the case (Docket No. 68), begging the larger question of whether plaintiffs may, in fact, properly challenge Géigel's representation.

■ In the First Circuit, a motion to disqualify is a proper method for an attorney to comply with his obligation to report ethical violations, including potential conflicts of interest, by other members of the bar. *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir.1984). However, the court must at the same time be mindful that "disqualification motions can be tactical in nature, designed to harass opposing counsel, and ... 'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.' " *Id.* (citing Model Rules, Preamble ¶ 20 (2002)). Thus, plaintiffs have standing to bring their motion but it "must be examined with caution." *Combustion Engineering Caribe, Inc. v. Geo P. Reintjes Co., Inc.*, 298 F.Supp.2d 215, 219 (D.P.R.2003).

### 2. Existence of Conflict

The rules dealing with conflicts of interest are chiefly concerned with protecting the client's confidential disclosures to the attorney and ensuring the attorney's loyalty to the client's interests. *Combustion Engineering Caribe, Inc.*, 298 F.Supp.2d at 220. The comment to Model Rule 1.7 notes that "if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Model Rule 1.7 cmt. (2002). This issue indeed raises a concern that there is a potential conflict here.

The court should closely review the parties' submissions to determine whether there is an actual conflict of interest between the parties. *Combustion Engineering Caribe, Inc.*, 298 F.Supp.2d at 221 ("[e]ven though at first blush it would appear [that the interests of multiply-represented parties are adverse] ... upon a closer examination of the particular interests of [the two parties], it would seem rather that their stakes and concerns place them on common grounds ...").

■ This case principally concerns claims under Section 1983 that defendants' removal of a fence from plaintiffs' property constituted an illegal taking. As the Second Circuit has observed, since the Supreme Court's decision in *Monell v. Department of Social Services,* municipalities can be held liable for employees' actions taken pursuant to municipal policy under Section 1983. *Dunton v. County of Suffolk,* 729 F.2d 903, 907 (2d Cir.1984) (citing *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Thus, the interests of municipalities and their employees may be in conflict in Section 1983 cases because the municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, while the employee, in contrast, can avoid liability by showing that his actions were taken pursuant to official policy. *Dunton,* 729 F.2d at 907. If the employee's immunity

defense is successful, the municipality may in turn be wholly liable because the employee's immunity defense is not a defense to the municipality's liability. *Id. See also Marderosian v. Shamshak*, 170 F.R.D. 335, 341 (D.Mass.1997) (setting aside judgment where single attorney represented both municipality and its employee based on "actual conflict of interests created by Town counsel's simultaneous representation of [employee] and the Town").

Here, Géigel has asserted a defense of qualified immunity.[5] (Docket No. 90). Defendants' submissions on this motion place this defense front and center, conceding that Géigel "organized and directed the December 20, 2007 operations, with authorization from the Mayor of Culebra" and asserting, "[i]n essence, this case is about attorney Géigel defending his actions with regards to the operation of December 20, 2007." (Docket No. 99). On the other hand, the government defendants have not asserted a defense that Géigel was acting outside the scope of his duties or that he was not acting pursuant to official policy. (Docket Nos. 46, 51). While it is possible that the government defendants do not wish to raise such defenses, it is also possible that their counsel, Géigel, has not apprised them of the availability of such a defense. Based on these competing legal theories, a potential conflict exists between Géigel and the government defendants. The court turns next to

the validity of the government defendants' informed consent to the multiple representation in the face of this conflict.

**3. Validity of Informed Consent**

Defendants assert that they have waived the conflict of interest, and confirmed their informed consent in the form of minutes from a meeting of the CCDA at which the Mayor was also present. (Docket No. 68). The minutes reflect that Géigel informed the entities of the underlying facts in the case and told them that "there is no conflict of interest between the defendants" in the case. (*Id.*). He thus "requested authorization to represent all defendants in said case" and "the mayor of Culebra and [CCDA's] Board of Directors unanimously authorized attorney Géigel to represent all defendants in [the case] and designate him lead counsel." (*Id.*). Plaintiffs contend that the minutes do not satisfy the requirements of Rule 1.7 because (1) the consent was based solely on a legal interpretation given to the government defendants by Géigel, the conflicted attorney; and (2) Géigel's representation violates his professional services contract with the CCDA.[6] (Docket No. 96).

Plaintiffs do not provide any support for their suggestion that Géigel is not the proper person to advise the government defendants of the potential conflict. The Model Rules appear to be more concerned with the *content* of the information given, rather than the identity of the person pro-

---

**5.** The court assumes, for the sake of this motion, that Géigel would be considered an "employee" of the government defendants under Section 1983.

**6.** Plaintiffs do not, however, challenge whether the transcription of the meeting minutes complies with the requirement that consent be given in writing. The Comment to Rule 1.7 explains that "the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a

writing." Because plaintiffs do not challenge this issue, and the business records of agencies and municipalities takes the form of meeting minutes, the court should not deem the informed consent improper on this ground. The court notes its concern, however, that defendants have not provided the court with a copy of the official transcript created and maintained in the course of business, but have merely transcribed the minutes into their brief. Nonetheless, this concern is mooted by the court's decision here.

viding it. For example, the Comment to Model Rule 1.7 states, "Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client." Model Rule 1.7 cmt. (2002). As discussed in the previous section, the potentially "adverse effects" on the interests of the government defendants is that (1) Géigel may successfully assert a defense of qualified immunity, thus shifting full liability to the government defendants; and (2) the government defendants may waive a potential defense that Géigel acted outside the scope of his duties and that they are therefore not responsible for his actions. *See Dunton,* 729 F.2d at 907. The meeting minutes do not reflect that Géigel informed the government defendants of these foreseeable effects of the multiple representation.

■ This issue does not mean, however, that it is not possible for the parties to give their informed consent. It is entirely possible that the government defendants, once property admonished, will conclude that Géigel was acting within the scope of his duties and that they do not wish to raise such a defense, and that their preferred defense does not turn on these issues. *See Figueroa–Olmo v. Westinghouse Electric Corp.,* 616 F.Supp. 1445, 1451 (D.P.R.1985) ("[p]arties also have a right to control their litigation in light of whatever interests they consider more important"). Moreover, in cases such as this

one, "[t]he balance of the interests involved as well as the hardship and financial burden disqualification would entail does not warrant the immediate termination of [defendants'] choice of counsel." *Combustion Engineering Caribe, Inc.,* 298 F.Supp.2d at 223. Here, while plaintiffs seek $2.5 million in damages (Docket No. 43), defendants have asserted that they believe the case is "frivolous" and, in any event, the removed gate was worth less than fifty dollars. (Docket No. 68, 66–2). If defendants indeed place such a low value on the risks they face in this case, the court should take that fact into consideration in evaluating their informed consent. *See* Model Rule 1.7 cmt. (2002) ("information required depends on the nature of the conflict and the nature of the risks involved").

Therefore, the motion to disqualify based on Rule 1.7 is **DENIED**, *provided,* however, that the government defendants submit written confirmation of their consent after having been informed of the potential adverse effects discussed above.[7]

## B. Model Rule 3.7

Model Rule 3.7 provides that, except in certain situations, "A lawyer may not act as advocate at a trial in which the lawyer is likely to be a necessary witness." Model Rule 3.7(a) (2002). Plaintiffs are correct in their argument that Géigel's testimony will likely be at the heart of the contested issues in this case given defendants' assertions that Géigel is the only person with

7. Plaintiffs also raise two issues concerning Géigel's professional services contract: (1) that the conflict of interest is further impermissible owing to language in Géigel's contract with CCDA, and (2) that the Mayor committing perjury in stating that Géigel was under contract with the Municipality. (Docket No. 96). I need not reach the first issue, but note that plaintiffs likely do not have standing to challenge Géigel's performance of a contract to which they are not parties, and unlike

his ethical obligations, their counsel is under no duty to enforce. With respect to the second issue, I find that plaintiffs have not adequately put forth evidence that the Mayor did not actually believe that Géigel was under some sort of contract with the Municipality. Whether such a contract existed and satisfied all of the rules and regulations cited by plaintiffs is a separate issue (and one not material here) from the very serious allegation that the Mayor committed perjury.

sufficient knowledge of the events at issue to answer the interrogatories and "[i]n essence, this case is about attorney Géigel defending his actions with regards to the operation of December 20, 2007." (Docket No. 99).

However, Model Rule 3.7, in its current form, is limited to representation *at trial.* Model Rule 3.7(a) (2002). The Rule is intended to address the following concerns: "1) the possibility that, in addressing the jury, the lawyer will appear to vouch for his own credibility; 2) the unfair and difficult situation which arises when an opposing counsel has to cross-examine a lawyer-adversary and seek to impeach his credibility; and 3) the appearance of impropriety created, *i.e.,* the likely implication that the testifying lawyer may well be distorting the truth for the sake of his client." *Culebras Enterprises Corp. v. Rivera–Rios,* 846 F.2d 94, 99 (1st Cir. 1988). The First Circuit has observed that these concerns "are absent, or at least greatly reduced, when the lawyer-witness does not act as trial counsel, even if he performs behind-the-scenes work for the client in the same case." *Id.,* 846 F.2d at 100. Defendants here have asserted that if the case proceeds to trial, Géigel will not represent defendants and attorney Rodríguez will represent defendants at trial. (Docket No. 99). Thus, so long as Géigel does not act as trial counsel, the purposes of Rule 3.7 will be served. Therefore, the motion to disqualify based on rule 3.7 is **DENIED,** *provided,* however, that Géigel is not permitted to represent the government defendants [8] at trial.

### CONCLUSION

For the reasons stated above, plaintiffs' motion to disqualify attorney Géigel is **DENIED,** provided that:

8. Plaintiffs have not moved to disqualify Géigel from representing *himself* in the case or at

(1) by no later than February 6, 2009, defendants provide to the court a signed document confirming that the CCDA, the Municipality, and the Mayor have consented to Géigel's representation after being informed that such representation may adversely affect their interests insofar as (a) Géigel may successfully assert a defense of qualified immunity and thus shift full responsibility to CCDA and the Municipality; and (b) the CCDA and Municipality may waive a potential defense that Géigel acted outside the scope of his duties and that they are therefore not responsible for his actions; and

(2) attorney Géigel is *not* permitted to serve as trial counsel, should this case proceed to trial.

**IT IS SO ORDERED.**